IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-02192-MSK-CBS

LESLIE BOELLSTORFF,

      Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
an Illinois corporation,

      Defendant.

_____

**OPINION AND ORDER GRANTING CERTIFICATION FOR INTERLOCUTORY
APPEAL AND DENYING MOTIONS FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion for

Summary Judgment **(# 60)**; the Plaintiff's Motion for Partial Summary Judgment **(# 62)**[1]; the

Plaintiff's Motion to Amend **(# 64)** the Court's September 11, 2006 Order **(# 63)**, the Plaintiff's

response **(# 73)**, and the Defendant's reply **(# 76)**; and the Plaintiff's Motion to Lift Stay **(# 78)**.

## FACTS

With a single central exception, the relevant facts of this case are undisputed. In May

1998, the Plaintiff's husband, Brian Boellstorff (who will hereafter be referred to as "Boellstorff,"

whereas the Plaintiff will be referred to as "the Plaintiff"), purchased an auto insurance policy

from the Defendant. At that time, Colorado law required that purchasers of auto insurance be

_____

[1]Shortly after the parties filed their respective summary judgment motions, the Court
stayed **(# 63)** this action pending the Plaintiff's decision to participate in a putative class action.
As a result of that stay, neither party responded to the other's summary judgment motion.

advised of the availability of enhanced personal injury protection ("PIP") benefits, and that the insured be given the option to purchase or decline such protection. C.R.S. § 10-4-706, 10-4-710 (repealed). The parties disagree on the fundamental question of whether Boellstorff was or was not advised of the availability of enhanced PIP coverage, but it is undisputed that the policy that was issued to him by the Defendant provided only for basic PIP coverage.[2]

On September 21, 2001, the Plaintiff was injured in an motor vehicle accident and sustained serious physical injuries. The parties agree that the Plaintiff's accident was covered by Boellstorff's policy with the Defendant. On September 25, 2001, the Defendant wrote to the Plaintiff, advising her of the scope of her coverage included payment of medical expenses up to $50,000 incurred within 5 years of the accident, and various other benefits limited by time and/or dollar amount. Although the record is not clear on the point, the Court assumes that the Plaintiff ultimately exhausted the benefits available under the policy, and continued to incur medical or rehabilitative costs, or continued to lose income after exhausting the policy benefits. The Plaintiff then commenced this action on October 31, 2005, alleging claims for reformation of the policy to include enhanced PIP pursuant to *Brennan v. Farmers Alliance Mutual Ins. Co.*, 961 P.2d 550, 554 (Colo. App. 1998), for breach of the contract as-reformed by failing to pay enhanced PIP benefits, for bad faith breach of the as-reformed contract, and for breach of the implied covenant of good faith and fair dealing.

---

[2]As defined by statute, "basic" PIP coverage, amounted to $25,000 per person/$50,000 per accident for bodily injuries, $50,000 per person for medical expenses incurred up to 5 years after an accident, $50,000 per person for rehabilitation services incurred up to 10 years after an accident, and up to $400 per week for lost wages for a period of up to 52 weeks. C.R.S. § 10-4-706(1)(a)-(d). Enhanced PIP coverage would allow payment of medical expenses without time and dollar limitations, and, optionally, remove time and dollar limitations from lost wage coverage as well. C.R.S. § 10-4-710(2)(a)(I)-(II).

The Defendant moved to dismiss (# 9) the action on timeliness grounds.  By Order (# 63) dated September 11, 2006, this Court found that the action was untimely, but that the Plaintiff was entitled to a tolling of the statute of limitations based on the pendency of a related class action.  The Court further stayed the action until the Plaintiff identified whether she intended to proceed as a member of the putative class or whether she intended to opt out of the class and pursue this litigation independently.  On September 15, 2006, the Defendant moved (# 64) to amend the Court's September 11, 2006 Order, requesting that the matter be certified for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Specifically, the Defendant argues that the Court's finding that the Plaintiff was entitled to a toll based on the pending class action presented a controlling question of law on which there could be a reasonable difference of opinion, the resolution of which could materially advance the termination of this and similar pending cases.  On February 8, 2007, the Plaintiff moved (# 78) to lift the stay, indicating that she wished to proceed in this action rather than as a class member.

In the interim, both parties filed motions for summary judgment (# 60, 62).  The Defendant sought summary judgment (# 60) on the grounds that: (i) the Plaintiff's action is untimely; (ii) the Plaintiff was not entitled to a tolling based on the pending class action; (iii) the Plaintiff lacks standing to complain of any defects in the Defendant's "Pedestrian Limitation" in the policy issued to Boellstorff[3]; (iv) the statute did not require an explanation of enhanced PIP

---

[3]Although the issue has not been adequately framed by the parties' failure to respond to each others' summary judgment motion, it appears that the Pedestrian Limitation issue involves the fact that, until late 1998, the Defendant's PIP coverage – even its enhanced PIP coverage – excluded certain benefits to injured pedestrians.  In 1998, the Colorado Court of Appeals held that the full panoply of enhanced PIP benefits must be made available to injured pedestrians as well. *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 554 (Colo. App. 1998).  Thus, appears to go to the Plaintiff's argument, because the PIP coverage offered by the Defendant

benefits to be made in writing; and (v) the Defendant sufficiently offered enhanced PIP benefits to Boellstorff by means of an insert mailed to Boellstorff in September 1998, in a renewal notice in February 1999, and in the policy booklet provided to him. The Plaintiff sought summary judgment (**# 62**) on the grounds that: (i) the Defendant could not have offered enhanced PIP coverage at the relevant time because, at that time, it had no such policy available; (ii) the renewal notice did not constitute a sufficient offer of enhanced PIP coverage; (iii) reformation of the policy to provide enhanced PIP benefits is thus required; and (iv) explanation of enhanced PIP coverage must be made in writing.

## ANALYSIS

### A.  Interlocutory appeal

28 U.S.C. § 1292(b) provides that, "[w]hen a district judge . . . shall be of the opinion that [an] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," it may so certify.  Upon such certification, the party aggrieved by the order may request the Court of Appeals, in its discretion, to hear an interlocutory appeal from that order.  *Id.*  Relief under the statute should be limited to extraordinary cases in which extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action.  *State of Utah v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994).  The Supreme Court considers §1292(b)

through late 1998 did not comply with the statute *vis-a-vis* pedestrians, and because that pedestrian limitation applied to all PIP policies issued by the Defendant during this time, none of the policies issued during this period complied with the statute, even as to insureds who were not injured as pedestrians.  This also appears to be the premise for the Plaintiff's argument, *infra.*, that the Defendant did not have a statutorily-compliant policy to offer until 1999.

to be particularly useful in resolving "threshold procedural issues," such as issues relating to dismissal of a party or service of process, as such issues do not generally require extensive factual records. *See Tidewater Oil Co. v. U.S.*, 409 U.S. 151, 171-72 & n. 46 (1972).

Under §1292, a "controlling question of law" is one that, if resolved differently, would entitle a party to judgment on obviate the need for further proceedings in the case. *American Airlines, Inv. v. U.S.*, 71 Fed.Cl. 744, 746 (Fed. Cl. 2006). Moreover, by its very terms, the question must be one strictly of law. *Casey v. Long Island R.R. Co.*, 405 f.3d 142, 146-47 (2d Cir. 2005). Here, the question of law the Defendants seek certification to appeal is whether the principles enunciated in *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 550-52 (1974) (filing of a putative class action tolls statute of limitations as to all potential class members) and its progeny, *see e.g. Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 353-54 (1983); *Joseph v. Wiles*, 223 F.3d 1155, 1167 (10th Cir. 2000), apply where a party otherwise protected by the class action toll commences an individual lawsuit prior to any class certification decision. This presents a question purely of law; the facts underlying the analysis – that the Plaintiff's individual suit is otherwise untimely, that she is a putative member of the class, that she commenced this action prior to any class certification decision – are either undisputed or matters that have been definitively resolved by the September 11, 2006 Order. The question does not require the weighing of evidence, as class action tolling is legal in nature, not equitable. *Joseph*, 224 F.3d at 1166. Moreover, the question is a controlling one, as a conclusion that the toll does not apply would require dismissal of the Plaintiff's claim as untimely, thereby vitiating the need for any further proceedings. Accordingly, the Court finds that the Defendant's request encompasses a controlling question of law.

5

The Court also finds that there is a reasonable basis for a difference of opinion on this issue. There is no clear, controlling authority in this Circuit addressing whether the filing of an individual lawsuit prior to class certification divests a party of the right to claim class action tolling. Although this Court interpreted *Joseph* as potentially indicating the correct outcome in such a case, 224 F.3d at 1167 n. 9 (applying the tolling despite noting in footnote that "there was not a definitive determination with regard to class certification . . . before he filed this action"), nothing in the court's analysis in *Joseph* indicates that the 10th Circuit was purporting to resolve this issue directly. More recently, the Sixth Circuit reached precisely the opposite conclusion in *Wyser-Pratte Mgmt. Co. v. Telxon*, 413 F.3d 553, 568-69 (6th Cir. 2005), finding that "[t]he purposes of *American Pipe* tolling are not furthered when plaintiffs file independent actions before decision on the issue of class certification." The court in *Wyser* observed that "this limitation on class action tolling has taken hold in a number of district courts, with no courts rejecting it," citing five district court decisions from various locations.

Although this Court did not adopt the argument urged by the Defendant and adopted by the court in *Wyser*, it cannot say that *Wyser* and the various cases it relies upon are patently wrong, and that the inference this Court drew from the discussion in *Joseph* is irrefutably correct. Rather, it is clear that there is room for reasonable debate as to whether the principles of *American Pipe* are served in the circumstances presented here.

Finally, the Court finds that resolution of an interlocutory appeal could hasten the termination of this litigation. It cannot reasonably be disputed that, if the 10th Circuit were to find

that the Plaintiff cannot resort to class action tolling in this case, the action is otherwise untimely[4]

and would be dismissed, obviating the need for any further motion practice or trial.  It is clear

that, if this Court and the Plaintiff are correct that tolling is available, the case will continue and

the interlocutory appeal will not have advanced the resolution of the litigation, but the fact that

the appeal will not be dispositive no matter how it is resolved does not seem to bear on the

question of whether it <u>could</u> materially advance the litigation.  "Threshold procedural issues" such

as service of process rarely present situations in which the outcome of the case will be definitively

resolved based on the outcome of an interlocutory appeal over that procedural issue, yet such

issues are particularly amenable to appellate review under § 1292.  *Tidewater,* 409 U.S. at 171-

72.

      More importantly, this Court is cognizant of the fact that the same issue of class action

tolling is present it at least one other case currently pending before the undersigned, *Schimmer v.*

*State Farm Mutual Automobile Ins. Co.,* D.C. Colo. Case No. 05-cv-02513-MSK-PAC, and

perhaps in several other cases as well.[5]  The parties in the *Schimmer* case are represented by the

---

[4]The Court assumes that the Plaintiff challenges the correctness of the September 11, 2006 Order's findings as to the appropriate accrual date of her claim, and presumably, would seek to appeal those findings either simultaneously with any interlocutory appeal, or serially, upon a holding by the 10th Circuit that class tolling was improper.  This Court takes no position as to whether the 10th Circuit can or should also the issue of the correct accrual date in an interlocutory appeal.  *But see Yamaha Motor Corp. v. Calhoun,* 516 U.S. 199, 205 (1996) ("the appellate court may address any issue fairly included within the certified order").  However, unlike the question of law presented by the Defendant, the findings of this Court as to the accrual date of the Plaintiff's claim present a mixed issue of law and fact, requiring far more thorough exploration of the factual record.

[5]The Court is cognizant of the fact that the defendant in *Schimmer* requested precisely the same relief as it seeks here*, see Schimmer Docket* # 45, and that this Court denied that request, *id., Docket* # 51.  Specifically, the Court found that although that case presented a controlling issue of law upon which there could reasonably be disagreement, there was an insufficient

same counsel as the parties in this case, and thus, permitting an interlocutory appeal of the issue will not only potentially accelerate the resolution of this case,[6] but may also hasten the resolution of *Schimmer* and potentially other cases as well.

Thus, the Court finds that the requirements of 28 U.S.C. § 1292(b) are present here, and that it is appropriate to deem the September 11, 2006 Order amended to find that the issue of whether the opportunity to invoke the class action toll of *American Pipe* is lost by a putative class member who commences an individual action prior to a decision as to class certification is a controlling question of law to which there is substantial ground for difference of opinion and that an immediate appeal from the Court's September 11, 2006 Order may materially advance the ultimate termination of the litigation.

### B.  Summary judgment motions

---

showing that an interlocutory appeal would advance the resolution of the litigation.  The Court based this latter finding on two observations: (i) "the Plaintiff might pursue relief in" the class action, presumably mooting any statute of limitations argument as to his individual claim; and (ii) that the plaintiff also had pending an "equitable tolling argument."  Neither of these obstacles exist in this case.  The Plaintiff here has indicated **(# 78)** that she wishes to abandon any right to remain a member of the putative class and instead will proceed with her individual action.  Thus, there is no risk that the statute of limitations issue will be mooted by her participation in the class action.  Moreover, notwithstanding the Plaintiff's assertion here that an equitable tolling issue remains to be decided, *see Docket* # 73 at 5, the Court has carefully reviewed the Plaintiff's response **(# 19)** to the Defendant's motion **(# 9)** that occasioned the September 11, 2006 Order, and finds no indication that the Plaintiff raised an equitable tolling argument there.  Thus, the rationale for denying certification for an interlocutory appeal in *Schimmer* does not apply here, and the Court's decision to permit such relief here is not inconsistent with its ruling in *Schimmer*.

[6]At a minimum, appellate resolution of the class tolling issue now will obviate the need for the 10th Circuit to consider that same issue in an appeal of a final judgment if the Plaintiff ultimately prevails at trial.

The parties, apparently believing that the Court's September 11, 2006 stay of the proceedings prevented them from doing so, have yet to respond to each other's summary judgment motions.  Although the issues raised in the motions appear to meet head-on – both parties seek summary judgment as to whether certain acts by the Defendant were sufficient to constitute offers of enhanced PIP coverage under the statute – the parties have framed the issues in such a way that the two motions do not fully respond to each other on the relevant issues.  For example, both parties assert that the other has the burden of proving whether an offer of enhanced PIP benefits was made, but have not addressed their opponents' citations in support of that assertion.  *Compare e.g. Docket* # 60 at 4 (Defendant contends Plaintiff has the burden of proving no offer made) *with Docket* # 62 at 6 (Plaintiff contends Defendant has burden of showing it made offer). Similarly, although the Plaintiff properly anticipated the Defendant's argument that a renewal notice it issued was sufficient to comply with the statute, the Plaintiff apparently failed to anticipate the Defendant's arguments that the insert and policy booklet also independently satisfied that obligation.  Thus, the Court finds that it cannot fairly resolve either party's summary judgment motion on the face of the record as it presently stands.

Ordinarily, the Court might resolve this problem by setting a schedule for the remaining briefing on the summary judgment motions.  But in light of the ruling granting the Defendant leave to pursue an interlocutory appeal, that course of action is no longer appropriate.  Assuming the Defendant takes advantage of the opportunity to file an interlocutory appeal, the purposes of permitting such an appeal – accelerating the resolution of potentially controlling issues so as to minimize the expense of litigation, *Kennecott Corp.*, 14 F.3d at 1495 – warrant staying all further briefing and prosecution of this case until that appeal is resolved.  Compelling the parties to brief

summary judgment motions that could be rendered moot by the appeal would be a waste of the parties' and the Court's resources.  Thus, the Court finds that, rather than requiring further briefing of the summary judgment motions, a continued stay of this litigation in all respects is warranted, until either the time for the Defendant to file an interlocutory appeal under § 1292(b) expires, or until any such appeal that is timely filed is disposed of by the 10th Circuit.  Rather than leave the summary judgment motions pending-but-unbriefed indefinitely as a result of such a stay, the Court will deny both parties' summary judgment motions without prejudice to refiling upon the lifting of the stay.

**C.  Motion to Lift Stay**

The Plaintiff moves to lift the stay imposed by the Court's September 11, 2006 Order, indicating that she wishes to abandon any claim in the putative class action and to instead proceed here.  The motion will be granted in part and denied in part.  Although the Plaintiff's representation satisfies the conditions in the September 11, 2006 Order for lifting the stay, the Court will nevertheless continue the stay incident to any interlocutory appeal on the terms set forth herein.  Moreover, because a stay pending appeal is likely to affect the parties' scheduled Pretrial Conference on February 22, 2006 and trial on May 14, 2007, those dates are vacated *sine die*.  Upon the lifting of the stay, the Court will set a scheduling conference to address the future progress of the case.

<u>CONCLUSION</u>

For the foregoing reasons, the Defendant's Motion for Summary Judgment **(# 60)** and the Plaintiff's Motion for Partial Summary Judgment **(# 62)** are **DENIED** without prejudice.  The Plaintiff's Motion to Amend **(# 64)** the Court's September 11, 2006 Order **(# 63)** is **GRANTED**,

and that Order is **DEEMED AMENDED** to reflect that the Court finds that under 28 U.S.C. § 1292(b), the issue of whether the opportunity to invoke the class action toll of *American Pipe* is lost by a putative class member who commences an individual action prior to a decision as to class certification is a controlling question of law to which there is substantial ground for difference of opinion and that an immediate appeal from the Court's September 11, 2006 Order may materially advance the ultimate termination of the litigation.  The action shall remain **STAYED** until either the time for the Defendant to file an interlocutory appeal under 28 U.S.C. § 1292(b) expires or until the 10th Circuit finally disposes of any such appeal, whichever is later.  The Plaintiff's Motion to Lift Stay (**# 78**) is **GRANTED IN PART**, insofar as the Plaintiff has satisfied the conditions for lifting the stay as set forth in the September 11, 2006 Order, and **DENIED IN PART**, insofar as this action shall remain stayed on the terms set forth herein.  The February 22, 2006 Pretrial Conference and May 14, 2007 trial date are **VACATED** *sine die*.

Dated this 20th day of February, 2007

BY THE COURT:

Marcia S. Krieger
United States District Judge

11