IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Action No. 05-cv-02192-CMA-CBS

LESLIE BOELLSTORFF,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
an Illinois corporation,

    Defendant.

## ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment (Doc. # 104). For the following reasons, the Motion is GRANTED.

## INTRODUCTION

This is an insurance dispute over personal injury protection ("PIP") benefits. In September 1998, Plaintiff's then-husband, Brian Boellstorff, purchased automobile insurance from Defendant. Over the next year, Mr. Boellstorff continued to purchase insurance from Defendant for additional vehicles. In June 1999, Defendant issued Policy No. 001-8731-F03-06, which covered Mr. Boellstorff's 1995 Ford Explorer. On September 21, 2001, Plaintiff suffered personal injuries in an accident while driving her husband's Explorer. Plaintiff received medical PIP benefits from Defendant until

they expired.  However, the PIP benefits did not cover all of Plaintiff's medical expenses related to the accident.

At the time Mr. Boellstorff purchased the policy for the Explorer, the Colorado Auto Accident Reparations Act ("CAARA") required drivers to retain a minimum amount of PIP coverage in their auto insurance policies.  CAARA also required insurers to "offer" enhanced personal injury protection ("EPIP") coverage to their insureds.  EPIP coverage simply included, for a higher premium, more benefits for a longer period of time than minimum PIP coverage.  In addition to the insured, the insured's relatives, and permissive users of the insured vehicle, CAARA also required PIP benefits to be payable to pedestrians involved an accident with the insured.

Courts construing auto insurance policies under CAARA have ruled that an insurer's failure to comply with certain provisions of the statute, including the requirement that insurers "offer" EPIP benefits, require the policy to be reformed to incorporate EPIP coverage.  Under this line of precedent, Plaintiff seeks a declaratory judgment reforming Mr. Boellstorff's policy so that she may recover EPIP benefits under Mr. Boellstorff's policy.  Plaintiff also seeks additional damages for breach and bad faith breach of the "reformed" insurance contract.

The procedural history of this case is rather long, but unnecessary here for disposition of the instant motion.  All that is relevant at this point is that Defendant seeks summary judgment on all of Plaintiff's claims.

## FACTUAL HISTORY

In September 1998, Mr. Boellstorff purchased two insurance policies: No. T61 4702-C10-06 from State Farm Fire and Casualty Company and No. C73 9284-C10-06 from State Farm Mutual Automobile Insurance Company. (Doc. # 109 at 2.) Defendant mailed Mr. Boellstorff a declaration for Policy No. T61 4702-C10-06. (*Id.*) The declaration contained an "Insert" entitled, "Higher PIP coverage limits are available." (Doc. # 104, Ex. A-5, at p. 2.) The Insert explained that Colorado law required minimum PIP coverage, which Defendant called "P1." (*Id.*) It also stated that, "Policyholders have the option to choose higher levels of PIP coverage – two of which are P8 and P4 coverages – for an additional premium." (*Id.*) The Insert said that P8 coverage was the "most [Defendant] will pay for all no-fault benefits combined . . . ." The Insert also described P4 coverage, which was the "same . . . as P8, except it provides broader loss of income benefits." (*Id.*) The Insert contrasted differences between different coverage levels, P1, P4, and P8, and instructed customers to contact a State Farm agent if they were interested in purchasing either of the enhanced coverage levels. (*Id.*) The Insert also stated that premium quotes for P4 and P8 coverages were enclosed (*id.*), although the quotes were not printed on the page and there is no evidence that quotes were actually provided to Mr. Boellstorff.

Prior to November 1998, Defendant's standard policy language limited PIP benefits for pedestrians to the P1 level regardless of the level of PIP benefits the insured actually purchased. Defendant refers to this limitation as the "pedestrian

limitation." However, after the Colorado Court of Appeals invalidated a similar limitation on pedestrian benefits, Defendant issued endorsement 6850AJ, which deleted the pedestrian limitation in its policies. (Doc. # 109 at 2.) Defendant also modified its standard policy language to remove the pedestrian limitation from policies issued after January 1999. (Doc. # 104, Ex. A-1.) Thus, when Defendant mailed Mr. Boellstorff a renewal notice for Policy No. C73 9284-C10-06 in February 1999, it also sent him endorsement 6850AJ, which deleted the pedestrian limitation from the earlier policy. (Doc. # 109 at 2.) At the same time, Defendant sent a policy declaration that included a "Schedule" of each of Defendant's available PIP coverage levels, including P1, P4 and P8. (Doc. # 104, Ex. A-6 at 5.) The Schedule laid out the different levels of PIP coverages, P1-P8, in table format and provided a breakdown of the different benefits related to each PIP coverage level. (*Id.*)

In June 1999, Mr. Boellstorff purchased another State Farm policy, No. 001-8731-F03-06. (Doc. # 109 at 2.) This policy provided coverage for Mr. Boellstorff's 1995 Ford Explorer. (*Id.*) As with the previous policies, Mr. Boellstorff purchased P1 level coverage, or basic PIP coverage. (*Id.*; Doc. # 104, Ex. A-7, at p. 1.) At the time he purchased this policy, Defendant's agent delivered a Policy Booklet to Mr. Boellstorff. (Doc. # 104, Ex. A-7.) The Policy Booklet contained a table-style "Schedule" of PIP benefits that was similar, if not identical, to the Schedule Mr. Boellstorff received in February. (*Id.*, Ex. A-1, at p. 12-13.) Since it was issued after January 1999, Policy

4

No. 001-8731-F03-06 did not contain the pedestrian limitation of earlier State Farm policies. (*Id.*)

Mr. Boellstorff purchased each of the three auto insurance policies from Glenna Morita, an employee of State Farm Agent, Dennis Morita. (*Id.*, Ex. A-4.) At the time Mr. Boellstorff purchased his policies, the Morita Agency's standard procedure was to explain the different levels of PIP coverage verbally to customers by using the policy documents, including the Schedule contained in the Policy Booklet. (*Id.*, Ex. A-8.) Ms. Morita stated that, to the best of her recollection, she would have followed this practice and explained the varying levels of PIP coverage to Mr. Boellstorff when he purchased the policy for the 1995 Explorer. (*Id.*)

Plaintiff was driving the Explorer when she was involved in a rollover accident on September 21, 2001. (Doc. # 109 at 2.) As a result of the accident, she suffered serious personal injuries requiring medical care. There is no dispute that she was covered under Mr. Boellstorff's policy and that Defendant paid minimum PIP benefits per the policy terms. (*Id.*) However, her costs exceeded the level of PIP benefits available under Mr. Boellstorff's policy.

## **STANDARD OF REVIEW**

Courts should grant summary judgment if the record indicates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Deepwater Investments, Ltd. v. Jackson Hold Ski Corp.*, 938 F.2d 1105, 1110-11 (10th Cir. 1991); *Devery Implement Co. v. J.I. Case*

*Co.*, 944 F.2d 724, 726 (10th Cir. 1991).  The moving party bears the initial burden of demonstrating the lack of an issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant meets this burden, the non-movant must respond with evidence sufficient to create a genuine issue of material fact for trial.  *Id.* at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  To overcome a motion for summary judgment, the non-moving party must present enough evidence to allow a reasonable jury to find in its favor.  *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).  In analyzing the evidence on a motion for summary judgment, a court should view the factual record and draw reasonable inferences in favor of the non-moving party.  *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir. 1995).

## ANALYSIS

The Court now turns to the question of whether Defendant has satisfied its burden under the aforementioned facts and standard of review.

**I.     APPLICABLE LAW**

This is a diversity case, so Colorado law will apply.  The Colorado legislature enacted CAARA to ensure that Colorado consumers received appropriate treatment from auto insurers in the event of an accident.  *See Reid v. Geico Gen. Ins. Co.*, 499

F.3d 1163, 1165 (10th Cir. 2007).[1] To help accomplish this goal, C.R.S. § 10-4-710 stated in relevant part:

> Every insurer **shall offer** for inclusion in a complying policy, in addition to the coverages described in section 10-4-706 [basic PIP coverage], at the option of the named insured:
>
> (I) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitation; or
>
> (II) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

C.R.S. § 10-4-710(2)(a) (emphasis added). The coverage described in this section has become known as enhanced or additional PIP coverage. Put into the context of this case, section 10-4-710(2)(a) required insurers to offer their insureds the ability to purchase EPIP coverage, in addition to the legal minimum PIP coverage described by C.R.S. § 10-4-706. *See Fazio v. State Farm Mut. Auto. Ins. Co.*, 55 P.3d 229, 231 (Colo. Ct. App. 2002) ("The plain meaning of [C.R.S. § 10-4-710(2)(a)] is that the named insured who has minimum PIP coverage under § 10-4-706 must be offered an opportunity to purchase certain types of enhanced PIP coverage.").

In *Brennan v. Farmers Alliance Mut. Ins. Co.*, the Colorado Court of Appeals held that when an insurer fails to "offer" EPIP coverage in accordance with C.R.S. § 10-4-

---

[1] The Colorado legislature repealed the CAARA provisions at issue in 2003, after the events giving rise to this lawsuit took place.

710, the policy in question should be reformed to incorporate the statutorily-required EPIP coverage. *See* 961 P.2d 550, 554 (Colo. Ct. App. 1998). *Brennan* involved a policy limitation on PIP coverage for pedestrians injured in auto accidents*. Id.* After finding that the limitation at issue violated section 710 by precluding the insured from being able to purchase EPIP coverage for pedestrians, the *Brennan* court removed the limitation on pedestrian coverage. *See id.* ("[W]hen, as here, an insurer fails to offer the insured optional coverage that satisfies the No-Fault Act [a.k.a. CAARA], additional coverage in conformity with the offer mandated by statute will be incorporated into the policy.").

*Brennan* and other decisions like it, *see, e.g., Thompson v. Budget Rent-A-Car Sys., Inc.*, 940 P.2d 987, 990 (Colo. Ct. App. 1996), have spawned numerous suits similar to the instant case. Some of these cases mirror *Brennan* in that the policy at issue failed to comply with CAARA by, for example, restraining the ability of the insured to purchase EPIP coverage for pedestrians. *See, e.g., Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1080 (10th Cir. 2007); *Clark v. State Farm Mut. Auto. Ins. Co.*, 292 F. Supp. 2d 1252, 1256 (D. Colo. 2003). In other cases, the key issue was not a limitation in the policy itself, but the sufficiency or reasonableness of the EPIP offer made by the insurer. *See, e.g., Reid*, 499 F.3d at 1168-70; *Padhiar v. State Farm Mut. Auto. Ins. Co.*, 479 F.3d 727, 733-35 (10th Cir. 2007); *Munger v. Farmers Ins. Exch.*, 174 P.3d 832, 834-37 (Colo. Ct. App. 2007); *Jewett v. American Std. Ins. Co. of Wis.*,

178 P.3d 1235, 1239-40 (Colo. Ct. App. 2007). Plaintiff relies on both types of cases in arguing for reformation of the policies at issue in this case.

## II. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiff presents three arguments she contends entitle her to policy reformation. First, Plaintiff argues that because the Colorado Court of Appeals in *Brennan* invalidated a pedestrian limitation similar to the one contained in Policy No. C73 9284-C10-06, she is automatically entitled to reformation here. Second, she argues that reformation is appropriate because Defendant did not provide Mr. Boellstorff with a written explanation of EPIP benefits pursuant to C.R.S. § 10-4-706(4)(a). Third, she argues that genuine issues of material fact exist regarding the sufficiency of Defendant's offer of EPIP coverage to Mr. Boellstorff under C.R.S. § 10-4-710.

### A. Plaintiff Cannot Rely On The Pedestrian Limitation.

The Court will first address Plaintiff's argument that reformation is appropriate because Defendant's pre-1999 policies contain an invalid pedestrian limitation. Defendant does not deny that the pedestrian limitation in its pre-1999 policies does not comply with CAARA. Thus, if the pedestrian limitation applies in this case, reformation of the policy would be appropriate. *See Brennan*, 961 P.2d at 554.

In the instant case, however, the pedestrian limitation is a non-issue. Even if the Court accepted Plaintiff's argument to reform the policy based on the invalidity of the pedestrian limitation, the Court could only reform the provisions relating to pedestrian benefits. *See Stickley*, 505 F.3d at 1080 ("[W]hen an insurance policy is found to violate

9

CAARA, only the defective portion of the policy is reformed to comply with CAARA. It does not wipe the slate clean and give the insured the fullest amount of benefits available for every category possible."). Here, Plaintiff was **driving** Mr. Boellstorff's 1995 Ford Explorer when she had her accident; she was not a pedestrian. Therefore, since Plaintiff was not a pedestrian, she is not entitled to pedestrian coverage and reformation of the pedestrian limitation would do her no good.

Accordingly, to the extent that Plaintiff's claims rely on reformation of the pedestrian limitation, those claims fail as a matter of law.

    **B.**    **C.R.S. § 10-4-706(4)(a) Does Not Apply In This Case.**

Plaintiff's second theory for reformation is that C.R.S. § 10-4-706(4)(a) required Defendant to provide a written explanation of EPIP benefits to Mr. Boellstorff. However, numerous courts have rejected this theory and Plaintiff cannot show why this Court should not join them.

Section 706(4)(a) states: "[a]n insurer issuing policies providing coverages as set forth in this section shall provide written explanations of all available coverages . . . ." Contrary to Plaintiff's argument, this section simply does not apply to EPIP coverage, which is governed by section 710. Indeed, both state and federal courts have interpreted section 706 to apply only to basic PIP coverage, not to EPIP coverage. *See Stickley*, 505 F.3d at 1077-78 ("We agree with the Colorado Court of Appeals; the plain meaning of § 706(4)(a) only requires insurance companies to provide written explanations of those benefits detailed in § 706, e.g., reduced benefits, basic benefits or

10

minium benefits."); *Folks*, 2008 WL 4636195 at \*\*9 (same) (citing *Munger*, 174 P.3d at 836));[2] *Padhiar v. State Farm Auto. Ins. Co.*, 2006 WL 517644, \*4 (D. Colo. Mar. 2, 2006) ("By its own terms, section 10-4-706 limits the written explanation requirement to minimum PIP coverages, not coverages set forth in different sections of [CAARA].").

These courts based their respective rulings on interpretations of the plain meaning of the statute and this Court finds no reason to deviate from their well-reasoned interpretations. Therefore, Plaintiff, like the plaintiffs in the cases described above, is not entitled to reformation based on Defendant's alleged failure to provide a written explanation of EPIP benefits. CAARA does not require such a written explanation. To the extent Plaintiff's claims rely on this particular provision of section 706, her claims fail as a matter of law.

**C.    Defendant's EPIP Offer Complied With C.R.S. § 10-4-710.**

Plaintiff's third argument for reformation is that Defendant's "offer" of EPIP coverage was insufficient under C.R.S. § 10-4-710. This theory is her most compelling, but it too, fails to win her the reformation she seeks.

1.    *The Parfrey Test*

CAARA does not define the term "offer" as it is used in C.R.S. § 10-4-710. Therefore, to determine whether an insurer's offer complies with C.R.S. § 10-4-710,

---

[2] This Court views the Colorado Court of Appeals' recent decision in *Munger* as especially instructive on the issue. *See Miller v. Automobile Club of N.M., Inc.*, 420 F.3d 1098, 1128 (10th Cir. 2005) (noting that decisions of state intermediate courts, although not controlling, may not be disregarded unless the federal court is convinced by other persuasive data that the state's highest court would rule otherwise).

11

the Tenth Circuit Court of Appeals and the Colorado Court of Appeals have turned to the commercial reasonableness test enunciated by the Colorado Supreme Court in an earlier, non-PIP insurance case, *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905 (Colo. 1992). *See Reid,* 499 F.3d at 1168-70 (citing *Parfrey*)*; Padhiar*, 479 F.3d at 733-35 (same); *Munger*, 174 P.3d at 834 (same). *But see Lust v. State Farm Mut. Auto. Ins. Co.*, 412 F. Supp. 2d 1185, 1191-92 (D. Colo. 2006) (holding that plaintiff's reliance on *Parfrey* test "is unavailing"); *May v. Travelers Prop. Cas. Co.*, 2006 WL 2784864, at *3 (D. Colo. Sept. 26, 2006) (questioning "whether the commercial reasonableness test set for in *Parfrey* is the correct standard under which to evaluate" an offer under C.R.S. § 10-4-710).³ Although *Parfrey* did not concern C.R.S. § 10-4-710(a)(2), the majority of courts to address the issue have relied on it to guide the determination of whether an insurer has made a statutorily compliant offer under section 710.

The *Parfrey* test asks whether an insurer's offer and description of EPIP coverage was reasonably calculated to permit the insured to make an informed decision regarding basic PIP versus EPIP coverage. *See Reid*, 499 F.3d at 1167 (citing *Parfrey*, 830 P.2d at 913); *Hill v. Allstate Ins. Co.*, 479 F.3d 735, 742 (10th Cir. 2007) (same). To answer this question, *Parfrey* provides a set of factors under which courts can analyze an offer of EPIP coverage. The factors include:

---

³ Despite the reluctance by previous courts in this district to adopt *Parfrey*, the Colorado Court of Appeals decision in *Munger* guides this Court's decision on this matter. *See Miller*, 420 F.3d at 1128 (unless convinced otherwise by persuasive data, federal court should follow state intermediate court decisions on state law issues); *Salt Lake Tribune Publ'g Co., LLC v. Management Planning, Inc.*, 454 F.3d 1128, 1134 (10th Cir. 2006) (noting that no deference is given to federal district court's interpretation of state law).

> the clarity with which the purpose of . . . coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the different levels of . . . coverage would be purchased, and any other circumstances bearing on the adequacy and clarity of the notification and offer

*Parfrey*, 830 P.2d at 913. Although these factors offer guidance, the final decision regarding the propriety of an insurer's EPIP offer is based on the "totality of the circumstances" surrounding the offer. *Id.* at 914.

### 2. *Defendant's EPIP Offer Was Sufficient Under Parfrey*

In this case, Defendant provided Mr. Boellstorff with multiple written explanations of EPIP coverage: the "Insert" for Policy No. T61 4702-C1006, Endorsement 6850AJ, the February 1999 Policy Declaration, and the June 1999 "Policy Booklet" for Policy No. 001-8731-F03-06. Defendant's agent also provided a verbal explanation.

Using large bold text, the Insert explained that "Higher PIP coverage limits are available." It then went on to briefly describe the differences between P1, P4, and P8 coverage, including the different dollar amount of benefits available. Although the Insert did not contain a price quote for the EPIP coverage, that omission is not determinative under *Parfrey*.

Likewise, the February 1999 Policy Declaration and the June 1999 Policy Booklet both contained a "Schedule" describing Defendant's PIP coverage levels, P1-P8. The Schedule consisted of a table that conveyed information on the varying levels of Defendant's PIP coverage including P1, P4 and P8 coverage. It included a breakdown of the amount of available benefits for each level of PIP coverage, time limitations for

benefits and the aggregate limit of benefits available. The Schedule was provided in addition to other written explanations of the PIP coverage contained in the Endorsement, Declaration, and the Policy Booklet.

Mr. Boellstorff also received a verbal explanation of EPIP coverage from Ms. Morita when he purchased the policy at issue. Ms. Morita stated that standard procedure, in place at the time Mr. Boellstorff purchased Policy No. 001-8731-F03-06, was to explain to customers the available PIP and EPIP options. She testified that, "Whatever [PIP coverage] was available, we explained. . . . Whatever coverages were available on the chart under the reduced or any other PIP coverage, we would have explained to the insured." (Doc. # 104, Ex. A-8, at 22:15 & 22:21-23.) To the best of her recollection, Ms. Morita would have provided Mr. Boellstorff with the "scenario for each PIP coverage that was available at that time." (*Id.* at 36:6-8.) Admittedly, Ms. Morita could not remember the particulars of the PIP coverage options available at the time Mr. Boellstorff purchased the insurance but, lack of total recall notwithstanding, Ms. Morita's testimony makes it clear that Mr. Boellstorff received a comprehensive explanation of the coverage choices, whatever the exact coverage limits may have been at the time.

Plaintiff's various attempts to inject a disputed issue of fact into the process fail to persuade. First, Plaintiff argues that there is a dispute as to whether Mr. Boellstorff received the Insert and Policy Booklet that Defendant sent out. She argues that Defendant cannot prove that it mailed the Insert to Mr. Boellstorff because the

procedure in place at Defendant in 1998-99 was to send policy materials to the agent, who would then send the materials to the insured.  Plaintiff argues, without any affirmative evidence, that the Morita agency may never have sent the materials to Mr. Boellstorff in this case.  However, Plaintiff's theory is unsupported speculation at best and is contradicted by Ms. Morita's recollection of the circumstances.  Ms. Morita declared that she mailed the policy documents to Mr. Boellstorff after her agency received them from Defendant's corporate office.  (Doc. # 113, Ex. A-23.)  Thus, Ms. Morita directly refuted Plaintiff's unsupported speculation.[4]  Therefore, the Court finds it undisputed that Mr. Boellstorff received the Insert and that he could have used the information contained therein when making his decision to purchase PIP or EPIP coverage.

Plaintiff also argues that the record lacks any evidence showing that Defendant provided Mr. Boellstorff with price quotes for EPIP coverage.  Thus, according to Plaintiff, Defendant's offer was insufficient.  However, price information amounts to only one factor the Court should consider under *Parfrey*.  Although Defendant never provided a detailed price quote to Mr. Boellstorff, the Insert indicated that he could purchase EPIP coverage for "an additional premium."  So, even though he did not have exact pricing information on EPIP coverage, Mr. Boellstorff knew that it would cost

---

[4]   Moreover, the Court will presume that a properly addressed article of mail reaches its destination, *Olsen v. Davidson*, 350 P.2d 338, 340 (Colo. 1960), and Plaintiff has nothing but speculation to show otherwise.

more than basic PIP, a fact that would contribute to his ability to make an informed decision on the subject.

Citing *Johnson v. Hartford Underwriters Ins. Co.*, 2007 WL 1830750 (10th Cir. June 27, 2007), Plaintiff further argues that the Policy Booklet should not factor into the *Parfrey* analysis because the Booklet constitutes a "policy" document not an "offer" document. However, *Johnson* is easily distinguishable from this case. In *Johnson*, the policy at issue did not conform with CAARA and, therefore, the insurer had to revise the policy to fulfill its statutory duty under section 710. *Id.* at **2. The Tenth Circuit Court of Appeals allowed the insurer to offer EPIP coverage **after** issuing the non-conforming policy. *Id.* ("An insurer's statutory duty is to *offer* [EPIP] coverage, and it can discharge that duty even after the policy issued.") (emphasis in original). But, because both sides conceded that the policy itself did not comply with CAARA, the *Johnson* court had to focus on special EPIP "offer" documents that the insurer provided after the policy had been issued rather than the policy documents themselves. The distinction between "offer" documents and "policy" documents was merely collateral to the specific facts of the case and *Johnson* did not set a hard and fast rule that policy documents cannot form a component of an insurer's EPIP offer under Section 710.

In the instant case, with the exception of the non-applicable pedestrian limitation, Plaintiff does not contend that Defendant's policy is facially deficient like the policy in *Johnson*. Therefore, unlike the *Johnson* situation, there was no reason for Mr. Boellstorff to ignore the Policy Booklet and the PIP Schedule contained therein.

Indeed, he could have considered Defendant's Policy Booklet in deciding which level of PIP coverage to purchase because the Booklet constituted yet another part of the EPIP offer that Defendant was required to make under section 710.

Plaintiff's final argument relates to the verbal explanation offered by the Morita agency. Plaintiff contends that Ms. Morita's explanations of PIP and EPIP benefits were insufficient as a matter of law. However, Ms. Morita recalls meeting face to face with Mr. Boellstorff on multiple occasions. She also stated that she had a routine practice of explaining the various PIP coverage levels contained in the PIP Schedule to customers. Thus, her verbal explanation contained more detail regarding PIP and EPIP coverage than the agent's explanation in *Morris v. Travelers Indem. Co. of Amer.*, 518 F.3d 755 (10th Cir. 2008), on which Plaintiff relies. Moreover, Ms. Morita's explanation supplemented the written materials provided to Mr. Boellstorff; it did not stand in lieu of a written explanation. Thus, even if Ms. Morita's explanation alone may not have fully complied with section 710, Defendant's use of the written documents, in conjunction with Ms. Morita's verbal explanation, would constitute a statutorily compliant EPIP offer.

Viewing the totality of the circumstances surrounding Defendant's EPIP offer to Mr. Boellstorff, Defendant provided Mr. Boellstorff with information that was reasonably calculated to allow him to make an informed decision regarding the purchase of PIP coverage.

## **CONCLUSION**

The undisputed facts indicate that reformation is unwarranted in this case. First, because Plaintiff was not a pedestrian, she cannot rely on the pedestrian limitation. Second, Defendant did not have to provide a written explanation of EPIP benefits to Mr. Boellstorff under C.R.S. § 10-4-706 because that section of the statute applies to basic PIP coverage only. Third, Defendant's written and verbal offer of EPIP benefits complied with C.R.S. § 10-4-710 as a matter of law. Finally, because reformation is inappropriate in this case, Plaintiff's other claims, which depend entirely on a reformed policy, should be dismissed, as well.

Accordingly, the Motion for Summary Judgment is GRANTED and this case is DISMISSED WITH PREJUDICE.

DATED: March __18__, 2009

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge